Hearing Date: 5/20/2025 10:00 AM - 10:05 AM
Location: <<CourtRoomNumber>>
Judge: Calendar, 16

1:25-cv-01190-JEH-RLH   # 10-1   Filed: 08/05/25   Page 1 of 18

FILED
5/12/2025 9:15 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH00428
Calendar, 16
32674139

FILED
Tuesday, 05 August, 2025 05:08:51 PM
Clerk, U.S. District Court, ILCD

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** *ex rel.* **KWAME RAOUL**, Attorney General of the State of Illinois,<br><br>*Plaintiff*,<br><br>v.<br><br>**SPARK ENERGY, LLC and SPARK ENERGY GAS, LLC,** Texas limited liability corporations**.**,<br><br>*Defendants*. | Case No. 2025-CH-00428<br><br>Hon. David B. Atkins<br><br>Calendar 16 |

## DEFENDANTS' MOTION FOR INVOLUNTARY DISMISSAL

Defendants SPARK ENERGY, LLC and SPARK ENERGY GAS, LLC (together, "Spark" or "Defendants") respectfully submit this Motion for Involuntary Dismissal under Section 2-619(a)(6).

### I.     INTRODUCTION

The Complaint in this action advances claims against Spark that the state Attorney General has already released and abandoned. The Attorney General, having extracted the benefit of the bargain from the earlier release, now attempts to ignore that release. The improper pursuit of released claims is compounded by the decision of the Attorney General to impermissibly delegate his constitutional and statutory duties to private law firms that have private-sector, rather than public-official, motives. For those reasons, Spark requests that the Court dismiss the Complaint and enter judgment in favor of Spark.

In 2018, the Attorney General brought claims against Major Energy Electric Services LLC for alleged improper sales practices that closely parallel the Attorney General's claims against Spark here. Spark and Major are wholly owned by the same entity, and the family of companies

to which Spark and Major belong utilize or utilized vendors and alleged practices that the Attorney General put at issue in the Major Energy case. Major Energy and the Attorney General resolved that prior suit in 2019. In so doing, the Attorney General entered into a broad release and a Consent Decree pursuant to which the Attorney General released not only Major Energy, but also Major Energy's "affiliates." The claims that the Attorney General released were not just claims arising from or that were "based on" the Attorney General's allegations against Major Energy. Instead, the Attorney General agreed broadly that the 2019 release of Major Energy and its affiliates covered any claims that were "related to" those that the Attorney General had earlier advanced.

The claims here closely relate to those that the Attorney General advanced in that earlier action, and Spark, as an "affiliate" of Major, is an entity that the Attorney General agreed to release. The claims advanced here are therefore invalid and barred due to that earlier release.

Moreover, the Attorney General's pursuit of these claims against Spark in coordination with private contingent-fee law firms is in direct violation of Article V of the Illinois Constitution, the separation of powers, and Spark's due process rights. Accordingly, Spark requests that the Court dismiss the Complaint because the Attorney General has released these claims and also because the Attorney General's pursuit of these claims using private law firms violates the Illinois Constitution and Illinois law.

## II.    FACTS

### A.    Spark Entities

Spark Energy and Spark Energy Gas are Texas limited liability companies. Spark Energy is an Alternative Retail Electric Supplier ("ARES") in Illinois. Spark Energy Gas is an Alternative Gas Supplier ("AGS") in Illinois.

### B. Spark's Affiliation with Major Energy

Both Spark entities are affiliates of Major Energy Electric Services LLC ("Major Energy"). *See* Declaration of Paul Konikowski at ¶¶ 3-4. The Konikowski Declaration is attached as **Exhibit A**. The Spark entities and Major Energy share common ownership. All three are wholly owned by Spark HoldCo, LLC. *Id.* at ¶ 3. Spark and Major have shared that affiliation since 2016. *Id.* at ¶ 4. The personnel who manage Major Energy are the same as those who manage Spark. *Id.* at ¶ 6-7. Certain vendors who provided sales and marketing services to Major Energy also provided sales and marketing services to Spark. *Id.* at ¶ 8.

### C. The Attorney General's Broad Release of Major Energy and its Affiliates

On April 9, 2018, the Attorney General filed a Complaint against Major Energy in the Chancery Division of the Circuit Court of Cook County, Illinois at No. 2018 CH 4549. A copy of the Major Energy Complaint is attached as **Exhibit B**. During that litigation, Major Energy expressly disclosed to the Attorney General that Major Energy, Spark Energy, and Spark Energy Gas were affiliates, all wholly owned by the same entity. *See* Konikowski Declaration at ¶¶ 9-10. After protracted litigation and negotiations, the Attorney General and Major Energy settled the dispute and negotiated the terms of a Final Judgment and Consent Decree. On August 16, 2019, Judge Neil H. Cohen approved and entered the Final Judgment and Consent Decree, a copy of which is attached as **Exhibit C**.

Section XVI of the Final Judgment and Consent Decree provides:

#### XVI. Releases by the Attorney General

> 43. As of the Effective Date, *the Attorney General shall release and discharge Major and each and all of its past and present* parents, subsidiaries and divisions, *affiliates*, predecessors, successors, assigns, directors, officers, employees, and agents *from all civil claims* that the Attorney General could have brought *relating to the acts and practices alleged in the Complaint* through the Effective Date. . . . .

(Emphasis added).  Thus, the Attorney General did not just release Major Energy.  The Attorney General also released Major Energy's "affiliates," among others.  And the Attorney General did not just release claims arising only from what the Attorney General pled in the Major Energy Complaint or that were based only on Major Energy's alleged conduct.  Instead, the Attorney General more broadly relinquished "all civil claims that the Attorney General could have brought *relating to*" what the Attorney General had alleged in the Major Energy Complaint.  (Emphasis added).

### D.    Attorney General Releases Issued in Cases Against Other ARES

In similar actions against other ARES, the Attorney General entered into releases narrower than the Major Energy release.  For instance, in June 2019, in an action against IDT Energy LLC at No. 2018 CH 14380, the Attorney General entered into a Final Order and Consent Decree that included the following release language:

### XII.  Release

> 41.    Following full payment of the amounts due under this Consent Decree, the Attorney General and the Illinois Commerce Commission shall release and discharge IDT and each and all of its past and present parents, subsidiaries and divisions, affiliates, predecessors, successors, assigns, directors, officers, employees, and agents *from all claims* that the Attorney General and the Illinois Commerce Commission could have brought *based upon the acts and practices alleged in the Complaint* through the Effective Date of this Consent Decree.

(Emphasis added).  A copy of the IDT Consent Decree is attached as **Exhibit D**.  Thus, in the IDT case, the Attorney General limited the release to claims "based upon" those alleged in the IDT Complaint, in contrast to the Major Energy release where the Attorney General more broadly released any claims "relating to" those pled against Major Energy.

Even more tellingly, in April 2025, the Attorney General released claims against Direct Energy Services, LLC at No. 25 CH 4091.  In that Final Judgment and Consent Decree, the

4

FILED DATE: 5/12/2025 9:15 PM    2025CH00428

Attorney General issued a release much narrower than the Major Energy release. The Attorney General did not release Direct Energy's "affiliates" and limited the release to claims "based on" the particular acts and practices "*engaged in by Direct* as alleged in the Complaint." (Emphasis added). Moreover, in stark contrast to the Major Energy release, the Attorney General expressly excluded Direct Energy's parent and affiliates from that release. Section XVI of the Direct Energy Consent Decree provides:

### XVI. Releases by the Attorney General

> 50. As of the Effective Date, the Attorney General shall release and discharge Direct and its directors, officers, and employees and NRG Energy, Inc., and its directors, officers and employees, from all civil claims that the Attorney General could have brought *based on the acts and practices engaged in by Direct as alleged in the Complaint* through the Effective Date. *For the avoidance of doubt, nothing herein releases NRG Energy, Inc., or its directors, officers and employees from civil claims arising out of acts and practices engaged in by subsidiaries of NRG Energy, Inc., other than Direct.*

(Emphasis added). A copy of the Direct Energy Consent Decree is attached as **Exhibit E**.

In discussions that occurred in advance of the Attorney General's initiation of this action, Spark reminded the Attorney General that it was an affiliate of Major Energy and that the Major Energy release barred the Attorney General's threatened claims against Spark. The Attorney General and the private law firms handling this litigation on behalf of the Attorney General refused to recognize the breadth and applicability of the releases and the Consent Decree issued in the Major Energy action.

### III. ARGUMENT

The language of the release reflects the bargain struck by Major Energy in concluding costly and distracting litigation. The release encompasses the claims in this case. It is, by its express and unambiguous terms, broader than other such releases entered into by the Attorney

5

FILED DATE: 5/12/2025 9:15 PM    2025CH00428

General. It is broader in precisely the way that the Attorney General and his extra-constitutional co-counsel here now choose to ignore.

A. **The Major Energy Release Bars the Attorney General's Claims Against Spark**

In Illinois, a release "is a contract and is therefore governed by contract law." *Miller v. Lawrence,* 61 N.E.3d 990, 997 (Ill. App. Ct. 2016). "Where a contract is clear and explicit, a court must enforce it as written, and the meaning of the contract, as well as the intention of the parties, must be gathered from the document without the assistance of extrinsic aids." *Id.; accord Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984); *Borsellino v. Putnam*, 962 N.E.2d 1000, 1023-24 (Ill. App. Ct. 2011); *Havayollari v. AAR Aircraft Services, Inc.*, 62 N.E.3d 368, 374-75 (Ill. App. Ct. 2016) (applying New York law); *Preferred Risk Mut. Ins. Co. v. Church Extension Bd.*, No. 2016-CH-05727, 2019 WL 13380198 (Cir. Ct. Cook Cty. July 1, 2019) (Atkins, J.), *aff'd*, No. 1-22-0235, 2023 WL 3344331 (Ill. App. Ct. May 10, 2023).

Here the contract is clear and unambiguous. It applies to Major Energy's "affiliates." It applies broadly to claims that "relate to" acts and practices alleged in the Major Energy Complaint through August 16, 2019 (the "Effective Date" of the Consent Decree). Such claims are claims that the Attorney General could have brought.

It is beyond dispute that the Spark entities are "affiliates" of Major Energy. *See* Konikowski Declaration at ¶¶ 3-4, 11. The Spark entities and Major Energy are all and, at all relevant times, have been, wholly owned by Spark HoldCo. *Id.* Major and the Spark entities, as sister companies, are affiliates under any definition of that term. *See*, *e.g.*, 215 ILCS 5/445; *accord* Black's Law Dictionary at 67 (9th ed. 2009). Accordingly, the Spark entities are eligible for the benefit of the 2019 release that concluded the Attorney General's action against Major Energy.

The claims that the Attorney General asserts here against Spark relate to the claims that the Attorney General filed against Major Energy. To relate means "to stand in some relation" or "to

6

bring into association with or connection with." Black's Law Dictionary at 1288 (6th ed. 1990). Spark and Major Energy shared common ownership and ultimate management in 2018 when the Attorney General sued Major Energy, in August 2019 when the Attorney General settled the claims against Major Energy, and the same is true today. The Attorney General's Complaint here against Spark closely parallels the allegations that the Attorney General made against Major Energy. *Compare, e.g.,* Spark Complaint, ¶¶ 28-38 to Major Energy Complaint, ¶¶ 32-42.

The following illustrates how much overlap exists between the two Complaints:

| Allegations against Major Energy | Allegations also made against Spark |
|---|---|
| Deceptive Marketing | ✓ |
| Use of third-party vendors | ✓ |
| Use of third-party verification firms | ✓ |
| Suggestions of association with utility companies or government | ✓ |
| Misrepresentations of savings | ✓ |
| Use of improper scripts | ✓ |
| Improperly obtaining customer account numbers | ✓ |
| Misconduct in relation to prizes | ✓ |

The first three Counts in the Complaint against Spark here are made pursuant to the Consumer Fraud and Deceptive Business Practices Act. The same was true of the Attorney General's Complaint against Major Energy. The fourth Count of the Attorney General's Complaint against Spark is made pursuant to the Telephone Solicitations Act. The same was true of Count IV of the Attorney General's Complaint against Major Energy. Two of the three deputy

7

attorneys general who are counsel in this case were also listed as counsel in the Complaint against Major Energy. Third-party vendors who did work for Major Energy in Illinois also did work for the Spark entities in Illinois. The same individuals who managed Spark were the same individuals ultimately who managed Major Energy. *See* Konikowski Declaration, ¶¶ 6-8, 10, 12. The claims that the Attorney General is pursuing here against Spark thus stand in some relation to, and have an association or connection with, the claims the Attorney General pursued against Major Energy.

The Attorney General knew before entering into the Release and Consent Decree with Major Energy that Spark Energy and Spark Energy Gas were affiliates of Major Energy. *Id*. at ¶ 10. As described above, the claims that the Attorney General makes here relate to the claims that the Attorney General made against Sparks's affiliate, Major Energy. The Attorney General's allegations here focus on acts and practices that precede August 16, 2019, the "Effective Date" of the Final Judgment and Consent Decree from the Major Energy action. When the Attorney General's intent is to enter into narrower releases, the Attorney General knows how to do so, as evidenced by the IDT Energy release and the Direct Energy release. The broad Major Energy release bars the Attorney General's claims here. *See, e.g., Preferred Risk*, 2019 WL 13380198 at *2.

      **B.**    **The Attorney General's Impermissible and Unconstitutional Use of Private Law Firms as "Special Assistant Attorneys General"**

Three private law firms signed the Complaint in this action. On information and belief, the private law firms are involved in these matters on a contingency fee basis.[1] The Attorney General's use of private law firms in this action violates the neutrality doctrine, the Illinois Constitution, and Spark's due process rights.

---

[1] Spark has issued FOIA requests to confirm that the private firms have been engaged on a contingent-fee basis. Notably, in its first response to those requests, the State has objected to the production of the requested records as allegedly overly burdensome and refused to produce any documents at all. Spark has issued narrower requests.

FILED DATE: 5/12/2025 9:15 PM    2025CH00428

### 1. Article V, Sections 15 and 21 of the Illinois Constitution

Article V Section 15 of the Illinois Constitution provides that the "Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." The Attorney General also retains the common law powers of the office. *People v. Illinois State Toll Highway Comm'n*, 120 N.E.2d 35, 45 (Ill. 1954).

Critically, Article V, Section 21 of the Illinois Constitution provides that the Attorney General "shall be paid [a] salar[y] established by law and shall receive no other compensation for [his] services." The Illinois Supreme Court has recognized that the duties of the Attorney General are too numerous to expect one person to be able to direct his or her "personal attention to all of them," and that, as a result, the Attorney General has the "power to appoint the necessary deputies and assistants to aid in carrying out those duties." *Saxby v. Sonnemann*, 149 N.E. 526, 529 (1925); *see also Saltiel v. Olsen*, 426 N.E.2d 1204 (Ill. 1981).

Under the Illinois Attorney General Act, one of the duties of the Attorney General is to "investigate alleged violations of the statutes which the Attorney General has a duty to enforce." Section 4(a) of the Act allows for the Attorney General to delegate his or her duties to subordinates, but those subordinates need to be "appointed by the Attorney General, *and on his payroll*." (Emphasis added). The Act expressly addresses what is permitted when the Attorney General (or the Attorney General's subordinates) are unable to handle certain proceedings. In such circumstances, *the Court* (with the Attorney General) "may appoint some competent attorney" to stand in the Attorney General's stead. 15 ILCS 205/1.

In Section 6.5 of the Act, the Legislature specifically created "within the Office of the Attorney General a Consumer Utilities Unit." ("CUU") 15 ILCS 205/6.5(a). It is the CUU that is to "ensure the benefits of competition in the provision of electric [and] natural gas … services." *Id.* The CUU is to consist of Assistant Attorneys General and staff. *Id.* at 205/6.5(c). The Act

9

does not state that the Attorney General is authorized to deputize private law firms rather than the CUU to pursue legal proceedings against electricity and natural gas suppliers, and, again, the Illinois Constitution only vests the Attorney General with powers "prescribed by law."

Clearly, the Illinois Constitution, which provides for the Attorney General to receive a "salary" and "no other compensation for his services," would forbid the Attorney General himself from receiving compensation in the form of a contingency fee payment dependent on the outcome of litigation. The constitutional question then is whether the Illinois Constitution permits a "special assistant attorney general" to do something that the Illinois Constitution prevents the Attorney General from doing.

The answer to that question is not surprising: the Attorney General cannot evade the provisions of the Illinois Constitution by allowing "special assistant attorneys general" to be compensated in a way that the Constitution prohibits for the Attorney General himself. Under *Saxby*, the Attorney General's deputies and assistants are but extensions of the Attorney General. 149 N.E. at 528; *see also* 1988 Ill Atty. Gen. Op. 249, 1988 WL 385547 (March 21, 1988) ("an Assistant Attorney General acts in the name of and on behalf of the Attorney General"). It follows then that the constitutional limits on the Attorney General apply with equal force to the deputies and assistants that *Saxby* and necessity allow the Attorney General to deploy. *See Saltiel*, 426 N.E.2d at 1209. It is notable that the deputy/assistant to the Attorney General in *Saxby* was paid a monthly salary as an employee of the Attorney General. 149 N.E. at 527.

*Saltiel* demonstrates that the Attorney General's engagement of private contingent-fee lawyers violates Article V, Sections 15 and 21. 426 N.E.2d 1204. There, the Court had awarded attorneys' fees to private lawyers who had successfully represented a taxpayer to recover fees paid to the Cook County recorder of deeds. The Attorney General intervened to challenge the private

10

lawyers' entitlement to recover their fees from the funds otherwise payable to state coffers. In *Saltiel*, it was *the Attorney General who argued that the award of such fees to private lawyers violated Article V, Sections 15 and 21* of the Illinois Constitution. *Id.* at 1209. The Illinois Supreme Court upheld the payment of fees to private counsel but did so, at least in substantial part, because Illinois did not engage the private lawyers:

> We are also unable to agree with the Attorney General's contention that the allowance of fees constitutes the payment of fees to private attorneys for the collection of taxes in violation of article V, sections 15 and 21, of the Illinois Constitution. *The State did not engage the plaintiff's attorneys*, and the claim that they were paid by the State rests upon the same erroneous assumption which has just been discussed.

*Id.* (emphasis added). Thus, in *Saltiel*, the Attorney General argued, and the Illinois Supreme Court appears to have agreed, that Article V, Sections 15 and 21 of the Illinois Constitution prohibit the payment of success fees to private attorneys if those attorneys are engaged by the State. That conclusion is inevitable because Article V, Section 21 states that the Attorney General [and by extension his deputies and assistants] are only permitted to receive a salary and are prohibited from receiving *any other compensation* for their services. *Accord State ex rel. Beeler v. Ritz Camera Centers, Inc.*, 878 N.E.2d 1152, 1169-70 (Ill. App. 2007) (payment to qui tam relator not equivalent to "compensation paid to attorneys for services rendered").

Here, in contrast to *Saxby*, the private law firms pursuing these claims against Spark are not salaried employees of the Attorney General or on his "payroll" pursuant to the Attorney General Act. Here, in contrast to *Saltiel*, the State has engaged the private lawyers to represent the State. And, here, in contrast to *Beeler*, the contingent/success fee payments to the private law firms are to be compensation for services rendered. Hence, in contrast to those cases, the Attorney General's pursuit of this action against Spark in coordination with private law firms, purportedly acting as assistant attorneys general, who are not salaried and who are to receive other

11

compensation for their services, is a violation of Article V, Sections 15 and 21 of the Illinois Constitution.

### 2. Article I, Section 2 of the Illinois Constitution – Due Process

Article I, Section 2 of the Illinois Constitution proscribes the deprivation of life, liberty or property without due process of law. Illinois's due process clause is in lock-step with the due process clause of the Fourteenth Amendment to the United States Constitution. *Kopf v. Kelly*, 240 N.E.3d 1094, 1110 (Ill. 2024). The Attorney General's use in this case of contingent-fee private law firms with an interest in the outcome of this matter deprives Spark of due process of law in violation of the Illinois Constitution. *Young v. United States*, 481 U.S. 787, 807 (1987); *Marshall v. Jerrico*, Inc., 446 U.S. 238, 250 (1980); Redish, Martin H., *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 Sup. Ct. Econ. Rev. 77 (2010); Dahlquist, David Edward, *Inherent Conflict: A Case Against the Use of Contingency Fees by Special Assistants in Quasi-Governmental Prosecutorial Roles*, 50 DePaul L. Rev. 743 (Winter 2000); Silverman, Cary and Jonathan L. Wilson, *State Attorney General Enforcement of Unfair or Deceptive Acts and Practices Laws: Emerging Concerns and Solutions*, 65 Kansas L. Rev. 209 (2016).

Due process entitles a party to have an impartial and neutral judge oversee a proceeding where the party's life, liberty or property is at issue. *See*, *e.g. People v. Hawkins*, 690 N.E.2d 999, 1003 (Ill. 1998). It goes without saying that a judge cannot have a financial stake in the outcome of a lawsuit. While he or she does not have to have the same level of impartiality as a judge, a public prosecutor is also required to have more neutrality than a private litigant. For instance, like a judge, a prosecutor cannot, consistent with due process, have a personal financial interest in the outcome of a matter. We expect and demand of public officials a level of detachment and

12

neutrality that due process does not demand of purely private parties. *See People v. Muhammad*, 238 N.E.3d 425, 446-47 (Ill. App. 2023).

In *Marshall*, the United States Supreme Court held that the due process clause "entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." 446 U.S. at 242. The question in *Marshall* was whether the structure of the Fair Labor Standards Act created an unconstitutional financial incentive for the Department of Labor by funneling fines for alleged child labor violations back into the budget for a division of the Department. The Court held that there was no due process violation, but, in so holding, the Court took particular note of the fact that "no official's salary is affected by the levels of penalties." *Id.* The Court added that due process imposes limits on the partisanship of administrative prosecutors. *Id.* at 249. "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." There the public prosecutors were not operating on a contingent fee basis. Here, the special assistant attorneys general pursuing these claims against Spark do have a personal and financial interest in the outcome and their compensation will be affected by the level of penalties imposed.

In *Young*, the Court, citing to *Marshall*, confirmed the existence of the "requirement of a disinterested prosecutor." 481 U.S. at 807. The *Young* Court held that the trial court's appointment of private counsel with a financial interest in the matter to serve as "special counsel to prosecute a criminal contempt" was impermissible. The Court stated that a "private attorney appointed to prosecute a criminal contempt should be as disinterested as a public prosecutor who undertakes such a prosecution." *Id.* at 804.

13

Here, there is no dispute that the Illinois Constitution forbids the Attorney General himself from pursuing a claim against Spark on a contingent fee basis. Under *Young*, any private lawyer appointed to pursue such a claim against Spark must be just as disinterested. Here, the "special assistant attorneys general" whom Attorney General Raoul has engaged to pursue claims against Spark are not as disinterested as the Illinois Constitution demands of the Attorney General himself. Therefore, the Attorney General's pursuit of this matter in coordination with contingent-fee private law firms deprives Spark of due process under the Illinois Constitution. *Accord Private Contingent Fee Lawyers and Public Power*, 18 Sup. Ct. Econ. Rev. at 84 ("by creating potentially distorting private incentives for those who exercise the coercive power of the state, the contingency fee practice removes the protections assured to defendants politically by the social contract that inheres in liberal democracy and constitutionally by the Due Process Clause"); *Inherent Conflict*, 50 DePaul L. Rev. at 780 ("The concept of allowing a Special Assistant to profit from a contingency fee contract is as absurd as allowing the Attorney General himself to receive a payoff for each fraudulent business he successfully challenges or each criminal conviction obtained."); *State Attorney General Enforcement*, 65 Kansas L. Rev. at 210 (Attorney Generals' use of contingent-fee private lawyers to pursue unfair trade practice cases "pose[s] a threat to good government, sound public policy, and due process").

### 3.   Separation of Powers

Article II, Section 1 of the Illinois Constitution states that the "legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." The Attorney General is part of the executive branch under Article V. The Illinois Constitution vests the legislative branch with the exclusive power of the purse. Article VIII, Section 2 of the Illinois Constitution states that the "General Assembly by law shall make appropriations for all expenditures of public funds by the State." That exclusive power includes the power to make

appropriations to fund the office of the Attorney General. *See Sears v. State,* 24 Ill. Ct. Cl. 452 (1964); *see also Saxby*, 149 N.E. at 604 (there is a "complete separation of the branches [that] completely deprives a member of one branch of authority to exercise any power properly belonging to the other two branches"). A comparable constitutional structure led the Supreme Court of Louisiana to prohibit the Louisiana Attorney General from using contingent-fee private law firms as special deputies. *Meredith v. Ieyoub*, 700 So. 2d 748, 783 (La. 1997).

Legislative appropriations to fund public prosecutors are an expression of public will and democratic priorities. Inherent in the role of any public prosecutor are the salutary limitations that multiple responsibilities and limited resources impose. *See, e.g., Morrison v. Olson*, 487 U.S. 654, 727-732 (Scalia, J. dissenting). While the idea that "every violation of the law should be prosecuted" has surface appeal, we as a free society in fact do not and should not want to supply prosecutors with the extensive and intrusive resources that would allow for the prosecution of every violation of the law. Football referees could call holding on every play; in basketball, traveling violations, if strictly enforced, would be nearly as frequent. "No local police force can strictly enforce traffic laws, or it would arrest half of the driving population on any given morning." *Morrison*, 487 U.S. at 727-28 (Scalia, J. dissenting). When a prosecutor is unshackled from the discipline that limited resources impose, the prosecutor loses "the perspective that multiple responsibilities provide" such that picayune matters can "assume the proportions of an indictable offense." *Id.* at 732; *accord State Attorney General Enforcement*, 65 Kansas L. Rev. at 215 ("By using contingency-fee arrangements, the Attorney General [does not] need to prioritize claims that most benefit the public welfare."). General Assembly appropriations thus are a proxy for the level of zeal that the public wants from police and prosecutors. *See also Sears*, 24 Ill. Ct. Cl. at 462.

15

By hiring private contingent-fee law firms to do the work that the Illinois Constitution and the General Assembly assign to him, the Attorney General seeks to extend his reach farther than the Constitution and the General Assembly allow. In Illinois, the General Assembly has by statute provided for a Consumer Utilities Unit within the Attorney General's office. The General Assembly provides appropriations to pay the salaries of the Attorney General and those deputies and assistants on his payroll. The General Assembly has not made appropriations of public funds to pay for the special assistant attorneys general that the Attorney General has hired here, nor has the General Assembly passed a statute permitting the Attorney General to engage and compensate such "special" assistants.

The Attorney General has impermissibly arrogated to himself powers that belong to the legislative branch of government. Consequently, the Attorney General's engagement of private law firms as special assistant attorneys general in this action and to contract to pay those firms with funds that would belong to the State is in violation of Article II, Section 1 of the Illinois Constitution.

## IV.   CONCLUSION

Based on the foregoing, the Defendants request that the Court grant this Motion and dismiss the Complaint with prejudice.

**DATED: May 12, 2025**                           Respectfully submitted,

*/s/ Gerald L. Maatman Jr.*
Gerald L. Maatman, Jr.
Ryan T. Garippo
George J. Schaller
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Tel: 312-499-6710
Email: *GMaatman@duanemeorris.com*
Email: *RGarippo@duanemorris.com*
Email: *GSchaller@duanemorris.com*
Firm ID No. 38820

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I, Gerald L. Maatman, Jr. certify that on May 12, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Circuit Court of Cook County, Illinois and to be served on the following counsel of record via email and through the Court's filing system.

Susan N. Ellis
Chief, Consumer Protection Division
Thomas J. Verticchio
Assistant Chief Deputy Attorney General
Darren Kinkead
Counsel, Public Interest Division
115 South LaSalle Street
Chicago, IL 60603
(312) 814-3000
Susan.Ellis@ilag.gov
Thomas.Verticchio@ilag.gov
Darren.Kinkead@ilag.gov
Atty. No: 99000

Christopher J. Wilmes
Tory Tilton
Special Assistant Attorneys General
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100
cwilmes@hsplegal.com
ttilton@hsplegal.com
Atty. No. 45667

Benjamin Blustein
Robert S. Libman
Matthew Owens
Paul S. Balik
Bernardo Lopez
Special Assistant Attorneys General
Miner, Barnhill & Galland, P.C.
325 N. LaSalle St., Ste. 350
Chicago, IL 60654
(312) 751-1170
bblustein@lawmbg.com
rlibman@lawmbg.com
mowens@lawmbg.com
pbalik@lawmbg.com
blopez@lawmbg.com
Atty. No. 44720

Jay Edelson
Ari Scharg
Jimmy Rock
Shantel Chapple Knowlton
Michael Ovca
Special Assistant Attorneys General
Edelson PC
350 N. LaSalle St., 14th Fl.
Chicago, IL 60654
(312) 589-6370
jedelson@edelson.com
ascharg@edelson.com
jrock@edelson.com
schappleknowlton@edelson.com
movca@edelson.com
Atty. No. 62075

*Counsel for Plaintiff*


/s/ *Gerald L. Maatman Jr.*
Gerald L. Maatman, Jr.