**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

SPARK ENERGY, LLC et al.,

      Plaintiffs,

v.

KWAME RAOUL, in his individual
capacity and in his official capacity as the
Attorney General of the State of Illinois,

      Defendant.

No. 1:25-cv-01190-JEH-RLH

Honorable Jonathan E. Hawley

## <u>THE ATTORNEY GENERAL'S MOTION TO STAY</u>

KWAME RAOUL
Attorney General of Illinois

Darren Kinkead
Office of the Attorney General
115 South LaSalle Street
Chicago, IL 60603

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND .......................................................................................................................... 3

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ................................................................................................................................ 6

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Chicago v. Purdue Pharma L.P.*,
No. 14 C 4361, 2015 WL 920719 (N.D. Ill. Mar. 2, 2015)............................................. 2, 3

*Donets v. Vivid Seats LLC*,
No. 20-cv-03551, 2020 WL 9812033 (N.D. Ill. Dec. 15, 2020)....................................... 8

*East Saint Louis v. Monsanto Co.*,
720 F. Supp. 3d 686 (S.D. Ill. 2024) ............................................................................... 2, 3

*Ennenga v. Starns*,
677 F.3d 766 (7th Cir. 2012) ............................................................................................ 4

*Geasland v. United States*,
No. 19-cv-18-jdp, 2020 WL 359906 (W.D. Wis. Jan. 22, 2020) ..................................... 8

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024).......................................................................................................... 2

*Jones v. Progressive Universal Insurance Co.*,
No. 22-cv-364-pp, 2024 WL 2874021 (E.D. Wis. June 7, 2024) ..................................... 8

*Laufer v. T & C Inn, LLC*,
No. 20-cv-3237, 2021 WL 5097572 (C.D. Ill. Nov. 2, 2021)................................... 5, 8, 10

*Marshall v. Jerrico, Inc.*,
446 U.S. 238 (1980)........................................................................................................... 7

*Radio Corporation of America v. Igoe*,
217 F.2d 218 (7th Cir. 1954)......................................................................................... 5, 8

*Roberts v. Graphic Packaging International, LLC*,
No. 21-CV-750-DWD, 2021 WL 3634172 (S.D. Ill. Aug. 17, 2021)............................... 8

*Sabo v. Erickson*,
128 F.4th 836 (7th Cir. 2025)........................................................................................... 9

*Sparger-Withers v. Taylor*,
628 F. Supp. 3d 821 (S.D. Ind. 2022) ............................................................................ 10

*Sparger-Withers v. Taylor*,
No. 1:21-cv-02824-JRS-CSW, 2024 WL 473719 (S.D. Ind. Feb. 7, 2024)........ 2, 3, 6, 7, 9

*Texas Independent Producers & Royalty Owners Association v. EPA*,
410 F.3d 964 (7th Cir. 2005) ................................................................... 5, 8

*Tonn & Blank Construction, LLC v. Sebelius*,
968 F. Supp. 2d 990 (N.D. Ind. 2013) .............................................................. 8

*Tumey v. Ohio*,
273 U.S. 510 (1927) ......................................................................................... 9

*Whitfield v. Spiller*,
76 F.4th 698 (7th Cir. 2023) ............................................................................ 9

*Wyllie v. Flanders Corp.*,
No. 21-cv-3078, 2021 WL 2283737 (C.D. Ill. May 28, 2021) ........................... 8

**Statutes**

220 ILCS 5/art. XVI ........................................................................................ 3

220 ILCS 5/16-101A ........................................................................................ 3

220 ILCS 5/art. XIX ........................................................................................ 3

815 ILCS 505/7 ................................................................................................ 1

## INTRODUCTION

Plaintiffs Spark Energy, LLC and Spark Energy Gas, LLC, run a scam. That's what Defendant Kwame Raoul, the Attorney General of Illinois, alleges in a complaint filed earlier this year in Cook County circuit court. ECF 12-2. After conducting a thorough investigation, the Attorney General found that these energy suppliers (collectively "Spark") have "deployed a wide variety of predatory sales tactics" over the past ten years to bamboozle Illinois consumers: gambits like "enrolling unwitting consumers in Spark services without their knowledge or consent" and falsely "promising lower rates and savings to consumers" who, to the contrary, end up shelling out "millions of dollars more for electricity and gas than" they would have if they had simply purchased those goods from the public utility. *Id.* at 2, ¶ 1.[1] Unsurprisingly, given these findings, the Attorney General filed a lawsuit in state court to seek remedies against Spark under the state's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(a).

So how did the parties to this Cook County lawsuit end up before a federal court in Peoria on opposite sides of the "v"? Believe it or not, it's because Spark claims to be the real victim here. It alleges that the Attorney General "is using private, profit seeking, contingency-fee law firms to pursue punitive civil claims against Spark." ECF 12 at 1, ¶ 4. And as Spark sees things, this practice supposedly violates its due process rights under the federal constitution. *Id.* at 2, ¶ 5. In other words, Spark thinks that it enjoys a constitutional right to select its own adversary—to micromanage a state attorney general's pursuit of state claims in state court—and to dragoon a federal court into its service so that Spark can avoid answering allegations that it committed a decade of fraud on Illinois consumers. Simply to state Spark's theory is to refute it.

---

[1] Page numbers refer to the ECF numbering at the top of the page rather than the original numbering at the bottom of the page.

Spark is hardly the first to resort to this baseless due process theory. In recent years, beleaguered defendants have been trotting out the same playbook—companies like Purdue Pharma, which "sits at the center of" the opioid "epidemic" that "represents 'one of the largest public health crises in this nation's history.'" *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 209 (2024) (explaining that "approximately 247,000 people in the United States died from prescription-opioid overdoses" between 1999 and 2019 and that the "epidemic has cost the country between $53 and $72 billion annually"). When Chicago hired contingency fee lawyers to hold Purdue Pharma responsible for its role in this tragedy, the company's response was the same as Spark's: it insisted that its due process rights were being violated by the city's "delegation of governmental police power to a financially interested private party." *Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2015 WL 920719, at *1-2 (N.D. Ill. Mar. 2, 2015). And while the argument was swiftly rejected, *id.* at *4-5, it still served a purpose: to increase the cost of pursuing justice. *See, e.g.*, *East Saint Louis v. Monsanto Co.*, 720 F. Supp. 3d 686, 688, 692-94 (S.D. Ill. 2024) (rejecting Monsanto's argument that its due process rights were violated by contingency fee lawyers engaged by East Saint Louis in action seeking to remediate chemical contamination).

But the tactic may soon be put to an end. Last year, an Indiana district court held that the due process clause does not bar states from engaging private lawyers on a contingency fee basis because the practice does not "'offend'" a "'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Sparger-Withers v. Taylor*, No. 1:21-cv-02824-JRS-CSW, 2024 WL 473719, at *7 (S.D. Ind. Feb. 7, 2024). The case is now before the Seventh Circuit, which heard argument last October and is considering whether to adopt the district court's reasoning as its own. *Sparger-Withers v. Taylor*, No. 24-1367. If it does, its holding likely will dispose of Spark's materially identical due process claim here.

2

Even if the Seventh Circuit charts a different course, its decision is likely to provide much-needed guidance on the scope of any restrictions that the federal constitution might impose on the states' use of contingency fee lawyers. As the district court recognized, there is currently "confusion in the caselaw." *Sparger-Withers*, 2024 WL 473719, at *1. Some courts assume that Spark's due process theory is viable, but few confirm this, and fewer still find a violation. *E.g.*, *Monsanto*, 720 F. Supp. 3d at 692-94; *Purdue Pharma*, 2015 WL 920719, at *4-5. At the very least, the Seventh Circuit's decision is poised to clear up the uncertainty.

For these reasons, the Attorney General respectfully moves the Court to stay this action pending the Seventh Circuit's decision in *Sparger-Withers*. A stay makes good sense under these circumstances: If the Attorney General were to respond to Spark's complaint, he would ask the Court to adopt the reasoning urged on the Seventh Circuit by the *Sparger-Withers* appellee and hold that the due process clause imposes no restrictions on his use of contingency fee lawyers. Spark would presumably retort that the Court should instead adopt the reasoning urged on the Seventh Circuit by the *Sparger-Withers* appellant and hold that the due process clause does impose certain restrictions on the Attorney General's use of contingency fee lawyers. In other words, the parties would be asking the Court to predict how the Seventh Circuit will rule in *Sparger-Withers*. It would be far more efficient just to wait for the Seventh Circuit to decide.

## BACKGROUND

Illinois consumers may purchase electricity and gas from alternative suppliers rather than the public utility. *See* 220 ILCS 5/art. XVI, art. XIX. Spark is an alternative supplier. ECF 12 at 3, ¶¶ 14-17. The legislature's goal in authorizing alternative suppliers was to spur competition in the electricity and gas supply markets, which it hoped would "create opportunities for new products and services for customers and lower costs for users." 220 ILCS 5/16-101A(b).

Unfortunately, the Attorney General recently determined that Spark has instead been exploiting Illinois consumers. In January 2025, he filed a lawsuit in state court that accused Spark of "deploying fraudulent, unfair, and deceptive business practices to dupe Illinois consumers into paying inflated prices for electricity and gas." ECF 12-2 at 2, ¶ 1. The Attorney General alleges that, for more than a decade, Spark "deployed a wide variety of predatory sales tactics, including enrolling unwitting consumers in Spark services without their knowledge or consent, increasing consumers' electricity rates by more than twenty percent without providing any advance notice to consumers, taking advantage of senior consumers, and promising lower rates and savings to consumers when, in reality, Spark consumers have paid millions of dollars more for electricity and gas than consumers who used the public utility as their supplier." *Id.*

Two days before filing this federal lawsuit, Spark moved to dismiss the Attorney General's state lawsuit. Defendants' Motion for Involuntary Dismissal, *People ex rel. Raoul v. Spark Energy, LLC*, No. 2025 CH 428 (Cook Cty. Cir. Ct. May 12, 2025), attached as Exhibit 1; *see Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (federal courts may take judicial notice of related state proceedings). Spark insisted that the Attorney General's lawsuit should be dismissed because, among other reasons, his "coordination with private contingent-fee law firms" violates "Spark's due process rights" under the Illinois constitution. Defendants' Motion for Involuntary Dismissal at 2, 12-14. Spark also argued that the Attorney General's claims were "barred" under a settlement agreement with its affiliate Major Energy Electric Services LLC ("Major"). *Id.* at 2, 6-8. Spark's motion is fully briefed, *see* Plaintiff's Response to Defendants' Motion for Involuntary Dismissal (June 18, 2025), attached as Exhibit 2; Reply in Support of Defendants' Motion for Involuntary Dismissal (July 1, 2025), attached as Exhibit 3, and will be argued in December, Advisement Order (July 18, 2025), attached as Exhibit 4.

4

Spark's federal lawsuit asserts two claims against the Attorney General. Both are based on the same constitutional theory. Spark thinks that the due process clause "proscribes the pursuit of criminal or punitive state actions by anyone who is not a sufficiently neutral public official." ECF 12 at 8, ¶ 52. And it takes issue with the contingency fee lawyers whom the Attorney General has engaged to prosecute his consumer fraud claims against Spark: those lawyers aren't "sufficiently neutral," Spark says, because they "stand to profit economically from" the litigation. *Id.* at 5, ¶ 38. Count I asserts this theory against the Attorney General in his individual capacity and seeks declaratory, injunctive, and monetary relief. *Id.* at 8-9, ¶¶ 53-59. Count II asserts the theory against the Attorney General in his official capacity and seeks declaratory and injunctive relief. *Id.* at 9-11, ¶¶ 60-65. Although the Attorney General isn't pursuing legal action against Major, it asserts the same counts and seeks the same relief. *Id.* at 8, ¶ 58; *id.* at 10, ¶ 65.

## LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Radio Corporation of America v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954). "When deciding whether to grant a stay, the court must consider three factors: '(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court.'" *Laufer v. T & C Inn, LLC*, No. 20-cv-3237, 2021 WL 5097572, at *1 (C.D. Ill. Nov. 2, 2021). "'A stay pending the outcome of litigation in another court . . . involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery.'" *Texas Independent Producers & Royalty Owners Association v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005).

## ARGUMENT

The Attorney General respectfully moves the Court to stay this action pending the Seventh Circuit's decision in *Sparger-Withers*. Spark and Major's claims are premised on their belief that the due process clause "proscribes the pursuit of criminal or punitive state actions by" contingency fee lawyers who are financially interested in the underlying litigation and therefore are not "sufficiently neutral" to satisfy constitutional requirements. ECF 12 at 5, ¶ 38; *id.* at 8, ¶ 52. The question before the Seventh Circuit in *Sparger-Withers* is whether the district court was correct to hold that **the due process clause imposes no limits at all** on the states' use of contingency fee lawyers. If the Seventh Circuit agrees, its decision will be dispositive here. And no matter how the Seventh Circuit rules, its decision is likely to provide much-needed guidance by clearing up the "confusion in the caselaw." *Sparger-Withers*, 2024 WL 473719, at *1.

*Sparger-Withers* concerns an Indiana law "allow[ing] private attorneys to prosecute civil forfeitures on a contingency fee basis." 2024 WL 473719, at *1. Like Spark and Major, the *Sparger-Withers* plaintiff believes that being prosecuted by contingency fee lawyers violates her due process rights because the federal constitution "establishes a 'financial disinterestedness requirement on prosecutors.'" *Id.* at *2. The district court took a different view: "Indiana's law, while out of step with modern policy consensus, is in line with early American practice and indistinguishable from that other atavism, the *qui tam* action, which has been held constitutional. Long before there was a public prosecutor, or even a clear divide between civil and criminal actions, states provided for law enforcement by informers working for reward." *Id.* at *1 (citations omitted). It follows that the states' modern use of contingency fee lawyers does not "'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental'"—and therefore plaintiff's due process theory "fails." *Id.* at *7.

6

The viability of this due process theory—the same theory pressed by Spark and Major—is now squarely before the Seventh Circuit. *Sparger-Withers v. Taylor*, No. 24-1367. As the *Sparger-Withers* plaintiff-appellant put it in her opening brief, the crucial question is whether the district court was correct to hold "that **due process imposes no constraint at all** on prosecutors' having a financial stake in their cases, civil or criminal." Brief of Appellant at 10 (Apr. 22, 2024), ECF 25 (emphasis added); *see* Brief of Appellees at 1 (July 19, 2024), ECF 53 (explaining that the due process clause "does not prescribe a particular compensation arrangement for advocates hired to press the government's position" and that "no precedent from the Supreme Court or [Seventh Circuit] forbids contingency-fee" lawyers). The Seventh Circuit heard argument last fall and took the appeal under advisement. Docket Entry (Oct. 31, 2024), ECF 69.

There can be no serious dispute: all of Spark and Major's claims are doomed if the Seventh Circuit agrees with the *Sparger-Withers* district court "that due process imposes no constraint at all on prosecutors' having a financial stake in their cases." Brief of Appellant at 10; *contra* ECF 12 at 8, ¶ 52 (alleging that "due process proscribes the pursuit of criminal or punitive state actions by anyone who is not a sufficiently neutral public official"). But the Seventh Circuit would not need to adopt the district court's reasoning whole cloth to provide valuable guidance. As the district court recognized, there is "confusion in the caselaw" that made resolving the "case more difficult than it ought to be." *Sparger-Withers*, 2024 WL 473719, at *1. That's because the due process theory pressed by Spark, Major, and the *Sparger-Withers* plaintiff alike is based primarily on dicta in a Supreme Court decision issued nearly half-a-century ago. *Id.* at *2-5 (discussing *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)). Although some courts assume that this is a viable theory, few engage in detailed analysis. Any insights that the Seventh Circuit may provide would contribute meaningfully to the limited body of caselaw that currently exists.

For these reasons, the Court should stay this action pending the Seventh Circuit's decision in *Sparger-Withers*. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Radio*, 217 F.2d at 220. A stay is particularly appropriate when "'the outcome of litigation in another court . . . involving the same or controlling issues'" would "'avoid[ ] unnecessary duplication of judicial machinery.'" *Texas*, 410 F.3d at 980. And there is ample precedent to confirm that the Court's power would be properly exercised here: district courts often stay proceedings pending the Seventh Circuit's resolution of a materially identical legal theory. *E.g.*, *Jones v. Progressive Universal Insurance Co.*, No. 22-cv-364-pp, 2024 WL 2874021, at *3 (E.D. Wis. June 7, 2024); *Roberts v. Graphic Packaging International, LLC*, No. 21-CV-750-DWD, 2021 WL 3634172, at *2 (S.D. Ill. Aug. 17, 2021); *Wyllie v. Flanders Corp.*, No. 21-cv-3078, 2021 WL 2283737, at *3-4 (C.D. Ill. May 28, 2021); *Donets v. Vivid Seats LLC*, No. 20-cv-03551, 2020 WL 9812033, at *3 (N.D. Ill. Dec. 15, 2020); *Geasland v. United States*, No. 19-cv-18-jdp, 2020 WL 359906, at *1 (W.D. Wis. Jan. 22, 2020); *Tonn & Blank Construction, LLC v. Sebelius*, 968 F. Supp. 2d 990, 993-95 (N.D. Ind. 2013).

The wisdom of a stay is confirmed by the three factors that courts consider when presented with such a request. As explained, the Seventh Circuit's decision in *Sparger-Withers* may affirm the district court's conclusion "that due process imposes no constraint at all on prosecutors' having a financial stake in their cases." Brief of Appellant at 10. Or, if the Seventh Circuit disagrees with the district court and concludes that due process does impose some constraints, it may identify what those constraints are. Either way, the Seventh Circuit is likely to provide guidance that "'will reduce the burden of litigation on the parties and on the court'" and "'will simplify the issues in question and streamline the trial.'" *Laufer*, 2021 WL 5097572, at *1.

8

Consider the alternative. The *Sparger-Withers* district court thoughtfully explained why Spark and Major's due process theory is based on a "misreading" of the Supreme Court's decision in *Marshall*—which, the district court noted, "cited with apparent approval its earlier precedent wholeheartedly endorsing private prosecution on contingency." *Sparger-Withers*, 2024 WL 473719, at *3 (discussing *Tumey v. Ohio*, 273 U.S. 510, 535 (1927)). If more is needed, the district court also thoroughly examined our nation's tradition to conclude that the states' use of contingency fee lawyers is entirely consistent with historical practice. *Id.* at *6-7. The Attorney General thinks that the *Sparger-Withers* district court got it right on both points; if pressed, he would ask this Court to adopt the same reasoning and dismiss Spark and Major's claims. Spark and Major would surely respond by asking the Court to reject the district court's reasoning: their claims require due process to impose *some* limits on the Attorney General's use of contingency fee lawyers, which cannot be reconciled with the district court's holding that it imposes *none*. Instead of forcing this Court to predict how the district court's decision in *Sparger-Withers* will fare in the Seventh Circuit, the better course is simply to wait for the Seventh Circuit to tell us.

A stay may also promote judicial economy by eliminating the need to address ancillary issues relating to Count I: Spark and Major's individual capacity claim seeking damages from the Attorney General. Of course, the claim must be dismissed if the *Sparger-Withers* district court was correct to hold that the due process clause imposes no limits at all on the states' use of contingency fee lawyers. In any other scenario, however, the Attorney General would be able to assert substantial defenses: for example, the failure to allege his personal involvement, *e.g.*, *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023), or qualified immunity because Spark and Major's supposed constitutional rights "were not clearly established at the time of the challenged conduct," *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (cleaned up).

To be sure, there's an argument that the due process claim in *Sparger-Withers* is moot. But the district court found otherwise. *Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 828-30 (S.D. Ind. 2022); *see* Brief of Appellant at 44-48 (explaining that Indiana's voluntary cessation of the challenged conduct "did not moot [plaintiff's] individual claim" and even if it did "two doctrines specific to class actions would secure jurisdiction over the class"). The Seventh Circuit, for its part, did not spend much time on mootness at oral argument.[2] So there's no specific reason to think that the Seventh Circuit will decide *Sparger-Withers* on any ground other than the merits. And, for all the reasons explained above, there's plenty of reason to think that a merits decision "'will reduce the burden of litigation on the parties and on the court'" and "'will simplify the issues in question and streamline the trial.'" *Laufer*, 2021 WL 5097572, at *1.

Meanwhile, a stay will not "unduly prejudice or tactically disadvantage" Spark or Major. *Laufer*, 2021 WL 5097572, at *1. Their theory under the federal constitution strikes at the heart of the Attorney General's authority to carry out his duties under state law. Neither side benefits from investing resources to litigate this important issue on such an uncertain legal landscape. That's particularly true because the uncertainty should be cleared up soon: the Seventh Circuit heard argument in *Sparger-Withers* almost a year ago, so its decision may arrive any day. Besides, the parties won't be sitting on their hands: Spark is busy seeking to dismiss the Attorney General's state lawsuit based on the same due process theory, albeit under the Illinois constitution. *But see* Reply in Support of Defendants' Motion for Involuntary Dismissal at 9, *People ex rel. Raoul v. Spark Energy, LLC*, No. 2025 CH 428 (Cook Cty. Cir. Ct. July 1, 2025), attached as Exhibit 3 (relying on federal due process cases "because the Illinois Constitution's due process clause marches in lock-step with federal due process jurisprudence").

---

[2] *See* https://media.ca7.uscourts.gov/sound/2024/dab.24-1367.24-1367_10_31_2024.mp3.

**CONCLUSION**

Spark and Major contend that the Attorney General's use of contingency fee lawyers violates their due process rights under the federal constitution. The Seventh Circuit is currently considering whether the due process clause imposes any limits on the states' use of contingency fee lawyers. The Attorney General respectfully moves the Court to stay this action pending the Seventh Circuit's decision.


Dated: September 16, 2025                           Respectfully submitted,

                                                     /s/ Darren Kinkead
                                                    Darren Kinkead
                                                    Office of the Attorney General
                                                    115 South LaSalle Street
                                                    Chicago, IL 60603
                                                    (773) 590-6967
                                                    Darren.Kinkead@ilag.gov

11