# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

SPARK ENERGY, LLC; SPARK
ENERGY GAS, LLC; and MAJOR
ENERGY ELECTRIC SERVICES, LLC,

    *Plaintiffs,*

v.

                         Case No. 1:25-cv-01190-JEH-RLH

KWAME RAOUL, in his individual
capacity and in his official capacity as
the Attorney General of the State of
Illinois,

    *Defendant.*

## ORDER & OPINION

This is a unique case. It was brought by a group of energy companies who are currently being sued by the Illinois Attorney General in Illinois state court for violating Illinois consumer protection laws. But the Attorney General himself is not prosecuting that civil enforcement action. Instead, he has conscripted private lawyers to do so—lawyers who, if they prevail, are poised to collect a sizeable contingency fee. This delegation of power, the companies say, violates a person's (and, by extension, a company's) right to be prosecuted by an impartial government lawyer under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

Yet the existence or scope of that right is not the subject of this Order, which addresses a different question altogether: whether this case should be stayed pending a decision by the Seventh Circuit addressing a legal theory identical to the one advanced by the companies. In asking for a stay, the Attorney General argues that

the Seventh Circuit's decision will either dispose of or, at least, significantly narrow the issues in this case. In opposing that request, the companies argue that a stay would give the Attorney General free reign to prosecute them in Illinois state court while depriving them of a federal forum to litigate their constitutional claims. For the reasons explained below, the Attorney General's Motion for a Stay, (Doc. 13), is GRANTED.

## BACKGROUND

As with most civil litigation, the parties' dispute began long before Plaintiffs Spark Energy, LLC; Spark Energy Gas, LLC; and Major Energy Electric Services, LLC (collectively, "Spark") filed a complaint in this Court. By and large, the history of that dispute is not relevant to the Attorney General's motion. Suffice it to say that the State of Illinois implemented sweeping reforms to the electric and gas industries in the late 1990s. (*See* Doc. 12-2 at 7.) Among those reforms was the Electric Service Customer Choice and Rate Relief Law of 1997, which for the first time allowed private companies—as opposed to public utilities—to supply electricity and natural gas to Illinois residents. 220 ILCS 5/16-101 to -135. Spark is one of those companies. (Doc. 12 at 3.)

In early 2025, the Attorney General filed a complaint in Cook County Circuit Court against Spark, alleging that its provision of electricity and gas violated the Illinois Consumer Fraud and Deceptive Business Practices Act.[1] (Doc. 12-2 at 2.) The

---

[1] In 2018, former Attorney General Lisa Madigan filed a similar complaint against Major Energy Electric Services, LLC (one of the three plaintiffs here). (Doc. 12-1 at 2.) That lawsuit ended in a settlement agreement, which released Major Energy and its affiliates. (Doc. 12 at 4.) The Cook County

complaint sought injunctive relief, a revocation of Spark's licenses to operate in Illinois, and monetary penalties. (*See* Doc. 12-2 at 30.) Spark has moved to dismiss that case based on, among other things, its contention that the Attorney General's use of private lawyers on a contingency fee basis violates the Due Process Clause of the Illinois Constitution. *See* Ill. Const. art. I, § 2 ("No person shall be deprived of life, liberty or property without due process of law . . . ."). Spark's motion remains pending and is set for oral argument at the end of this year. (Doc. 13-4 at 1.)

Two days after moving to dismiss the state court action, Spark filed a complaint in this Court against the Attorney General in both his official and individual capacities. (Doc. 1.) The four-count complaint alleged that the Attorney General's pursuit of the state court lawsuit violates both the Illinois and Federal Constitutions. (Doc. 1 at 7–11.) The Attorney General responded with a partial motion to dismiss. (Doc. 10.) Spark then filed an amended complaint, dropping its claims under the Illinois Constitution. (*Compare* Doc. 1 at 7–11, *with* Doc. 12 at 8–10.) Three weeks later, the Attorney General moved to stay the case, (Doc. 13), which Spark opposes, (Doc. 14).

## LEGAL STANDARD

A stay is an "order to suspend all or part of a judicial proceeding." *Stay, Black's Law Dictionary* (12th ed. 2024). The power to impose one is "incidental to the power

---

lawsuit filed in 2025 names only Spark Energy, LLC and Spark Energy Gas, LLC. Both of those companies argue that, as affiliates of Major Energy, they were released under the terms of Major Energy's settlement with Madigan. (Doc. 12 at 4.) The companies raise that defense in state court and in their amended complaint here, though it is beyond the scope of this Order. For purposes of clarity, the Court refers to all three entities as "Spark."

inherent in every court to control the disposition" of the cases on their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to do so, courts generally consider three things: (1) "the prejudice or tactical disadvantage to the non-moving party;" (2) "whether or not issues will be simplified;" and (3) "whether or not a stay will reduce the burden of litigation." *Johnson v. Navient Sols., Inc.*, 150 F. Supp. 3d 1005, 1007 (S.D. Ind. 2015). Ultimately, the decision is a discretionary one. *See Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999).

## DISCUSSION

Although both parties recite the relevant stay factors, none of the briefs devote much attention to them. Instead, the parties dispute whether this Court should temporarily step aside in light of the Seventh Circuit's forthcoming decision in *Sparger-Withers v. Taylor*, No. 24-1367 (7th Cir. argued Oct. 31, 2024). The Court first discusses that issue and concludes that it warrants a stay. The Court then turns to the relevant factors, which also favor a stay. Finally, Spark makes an alternative request: If the Court stays this case, it should also require the Attorney General to halt his prosecution in state court. Even if the Court had authority to grant that request, it would decline to do so. Accordingly, this case will be stayed.

## I.    The Seventh Circuit's Pending Decision

District courts frequently exercise their discretion to impose a stay when "a higher court in a separate case will decide issues of law that are significant to the case sought to be stayed." *Campbell v. Wagner*, No. 4:86-cv-271, 1987 WL 16945, at *1 (S.D. Ind. May 18, 1987) (staying two of the plaintiff's claims in anticipation of a

Supreme Court decision).[2] That is so even when the case in the higher court is not on all fours. Indeed, courts have imposed a stay when the higher court's decision "may not settle every question of fact and law," but is nonetheless likely to "settle many and simplify them all." *In re Literary Works in Elec. Databases Copyright Litig.*, No. 1:00-cv-6049, 2001 WL 204212, at *3 (S.D.N.Y. 2001) (quoting *Landis*, 299 U.S. at 256).[3] Courts also recognize, however, that the mere existence of a similar case in a higher court does not automatically require a stay. *See, e.g.*, *Johnson* 150 F. Supp. 3d at 1008 (declining to stay a case because the Supreme Court's forthcoming decision would "not affect [plaintiff's] entitlement to relief").

The cases demonstrate that courts, in exercising their discretion, should determine (1) the similarity of the legal issues in the lower and higher courts, and (2) the likely effect of the higher court's ruling. Where the issues are closely related and the higher court's ruling would be dispositive, the lower court should wait. But where the issues are distinct and the higher court's ruling would not control the analysis, the lower court should move ahead.

To conduct that inquiry here, a comparison between this case and *Sparger-Withers* is in order. *Sparger-Withers* involves a constitutional challenge to Indiana's

---

[2] *See also White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 461–62 (S.D. W. Va. 2013) ("A district court ordinarily has discretion to delay proceedings when a higher court will issue a decision that may affect the outcome of the pending case."); *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (noting that proceeding with the case "would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision"); *cf. Bell v. Merchants Bank of Ind.*, No. 1:18-cv-56, 2018 WL 10320583 (S.D. Ind. May 18, 2018) (finding a stay warranted where the decision in another trial court would simplify the issues in the case).

[3] *See also Adrianza v. Trump*, 505 F. Supp. 3d 164, 175 (E.D.N.Y. 2020) ("[D]istrict courts often stay litigation over questions that mirror or are intertwined with questions that are pending before a higher court.") (collecting cases), *vacated as moot*, *appeal dismissed sub nom.*, *Adrianza v. Biden*, No. 20-4165, 2021 WL 10140434, at *1 (2d Cir. Oct. 13, 2021).

civil forfeiture scheme, which "allows private attorneys working on a contingency fee basis to prosecute civil forfeiture cases on" the State's behalf. *Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 826 (S.D. Ind. 2022). Before filing the case, the plaintiff was stopped by police, who arrested her and confiscated her drugs and cash. *Id.* at 827. Along with the criminal proceedings that followed, the State brought a civil forfeiture action against the seized property. *Id.* In doing so, it enlisted a private attorney who worked on a contingency fee basis. *Id.* The plaintiff then brought a class action in federal court, challenging her state prosecution on constitutional grounds. After the class was certified, the parties cross-moved for summary judgment. All told, those motions posed a single legal question: "does Indiana's system of contingency-fee civil forfeiture prosecution violate due process?" *Sparger-Withers v. Taylor*, No. 1:21-cv-2824, 2024 WL 473719, at *1 (S.D. Ind. Feb. 7, 2024). Although the court recognized "some confusion in the caselaw," *id.*, it ultimately found that Indiana's use of contingency-fee lawyers to prosecute civil forfeiture actions comports with due process, *see id.* at *7. The plaintiffs have since appealed the court's ruling to the Seventh Circuit, *see* Notice of Appeal at 1, *Sparger-Withers*, No. 1:21-cv-2824, Dkt. No. 139, where briefing has concluded and oral argument was held on October 31, 2024. The plaintiffs' opening brief frames the legal question to be decided by the Seventh Circuit as follows: "whether Defendants' system of contingency-fee forfeiture

prosecutions violates the Due Process Clause." Brief of Appellant at 2, *Sparger-Withers*, No. 24-1367 (7th Cir. Apr. 22, 2024).[4]

The similarities between that case and this one are apparent. Both plaintiffs were named in civil enforcement actions brought by the state. Both states enlisted private lawyers operating on a contingency fee basis. Both plaintiffs assert that the Due Process Clause of the Fourteenth Amendment forbids that practice. And both plaintiffs base that argument on the same interpretation of the same language in the Supreme Court's 1980 opinion in *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). (*Compare* Doc. 14 at 3, *with* Brief of Appellant at 9, *Sparger-Withers*, No. 24-1367.) The Seventh Circuit's ruling on the merits of the plaintiffs' due process theory will therefore inform—if not dictate—the Court's analysis here.

Spark does not seriously dispute this. Instead, it argues that the Seventh Circuit might take too long to reach the merits (or not reach them at all), in which case the court's ruling would be unhelpful. Although Spark is correct on both counts, neither argument offers a persuasive reason to proceed with this case before the Seventh Circuit has offered its binding two cents.

Spark first argues that "[t]here is no way to know when the Seventh Circuit will issue an opinion in the *Sparger-Withers* matter." (Doc. 14 at 2.) Of course not. Only the Seventh Circuit controls its docket and can therefore predict when it will issue an opinion. But the case is fully briefed and was argued almost a year ago to

---

[4] The defendants' framing of the issue on appeal is broader: "Whether it violates the Fourteenth Amendment's Due Process Clause for a private attorney retained under a contingency-fee agreement to conduct a civil-forfeiture action on the government's behalf . . . ." Brief of Appellee at 3, *Sparger-Withers*, No. 24-1367 (7th Cir. July 19, 2024).

the day, which suggests it will be sooner rather than later. Spark also argues that

"the non-prevailing party could seek certiorari from the United States Supreme

Court, further delaying a final resolution of that action." (Doc. 14 at 2.) Even so, the

Seventh Circuit's decision would bind this Court unless and until the Supreme Court

reversed it. In fact, courts of appeal refrain from issuing their judgments (formally

called "mandates") when the losing party petitions for a writ of certiorari only in the

most extreme of circumstances. *See* Fed. R. App. P. 41(d) (requiring parties who move

to stay a mandate from a court of appeals to show "that the petition for a writ of

certiorari in the Supreme Court . . . would present a substantial question and that

there is good cause for a stay"); *see also McBride v. CSX Transp., Inc.*, 611 F.3d 316,

318 (7th Cir. 2010) (explaining that litigants seeking a stay pending the filing of a

petition for a writ of certiorari must meet a "significant burden"). In short, it is

possible that the *Sparger-Withers* plaintiffs lose in the Seventh Circuit, seek and

obtain a writ of certiorari from the Supreme Court, and secure a reversal. But it is

unlikely, and the remote possibility of that future chain of events does not influence

the Court's decision now.

Spark also argues that the Seventh Circuit may "limit[] its holding in *Sparger-*

*Withers* to the specific facts or otherwise fail[] to address the contentions at issue in

this lawsuit." (Doc. 14 at 2.) True, there is always a possibility that an appellate court

will cabin its decision to the facts before it.[5] And just as this Court cannot predict

---

[5] The Seventh Circuit has expressed a preference against deciding cases in this manner, given that the function of appellate courts is to establish rules of decision that can be uniformly applied by the lower courts. *See Richards v. Eli Lilly & Co.*, 149 F.4th 901, 909 (7th Cir. 2025) (noting that a lack of

with any degree of certainty *when* the Seventh Circuit will decide the case, it cannot predict *how* it will do so. If that were enough to overcome the similarities between the two cases, however, then lower courts would never impose a stay until a higher court issued its ruling. But they do. *See* cases cited *supra* notes 2–3. Nor is it conceivable that a merits decision by the Seventh Circuit will fail to address the issues in this case, given the similarity between Spark's arguments and the questions presented on appeal.

Finally, Spark observes that the plaintiffs' claims in *Sparger-Withers* may be dismissed as moot. (Doc. 14 at 2–3.) For its part, and as the Attorney General himself concedes, "there's an argument that the due process claim in *Sparger-Withers* is moot." (Doc. 13 at 14.) The Attorney General also argues that a mootness ruling is unlikely because the Seventh Circuit "did not spend much time on mootness at oral argument." (Doc. 13 at 14.)

Trying to predict the Seventh Circuit's rationale based on the relative time spent during oral argument on each issue strikes the Court as a futile endeavor. The fact is this: Every lawsuit originates from a particular factual and legal context. Many of them present unique procedural hurdles to obtaining relief. And sometimes, highly anticipated merits decisions never come because the appellate court resolves the case on procedural grounds. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737 (1984) (declining to reach the merits of plaintiff's claims that the IRS promoted school segregation because the plaintiffs lacked standing); *Baker v. Nelson*, 409 U.S. 810 (1972)

---

uniform rules "permits unpredictability and arbitrariness" in the legal system (citing Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1182 (1989)).

(dismissing as moot an appeal concerning the due process right to same-sex marriage); *Luther v. Borden* 48 U.S. 1 (1849) (holding that the case presented a non-justiciable political question rather than resolving it under Article IV's Guarantee Clause). In the end, the Court must weigh the costs and benefits of waiting until the Seventh Circuit has issued its decision in *Sparger-Withers*. On the "costs" side of that balance sheet, as always, is the possibility that the court does not reach the merits. On the "benefits" side, however, are the overwhelming similarities between Spark's claims and those of the *Sparger-Withers* plaintiffs, which would render a merits decision invaluable. *See In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212, at \*3. On balance, a stay is the more prudent course.

## II.    Stay Factors

In deciding whether to impose a stay, district courts have created a list of factors to guide the exercise of their discretion. The factors are: (1) "the prejudice or tactical disadvantage to the non-moving party;" (2) "whether or not issues will be simplified;" and (3) "whether or not a stay will reduce the burden of litigation." *Johnson*, 150 F. Supp. 3d at 1007. As applied here, those factors favor a stay.

Because the discussion above largely resolves factors two and three, the Court begins there. *See supra* Part I. Again, the Seventh Circuit's decision in *Sparger-Withers* will more likely than not simplify the issues in this case. As things stand, there is no word from the Seventh Circuit—or any court of appeals, it seems—on the viability of Spark's due process theory. To be sure, Spark insists that the Supreme Court's decision in *Marshall* supports its claims. But whether Spark correctly reads

10

that opinion is precisely the question the Seventh Circuit is poised to answer. It

follows that a stay would reduce the burden of the litigation on the parties: If the

issues are simplified, then the discovery process will be more tailored, and the parties'

briefing more refined. It would also reduce the burden on the Court: rather than

conduct the due process analysis in the dark—as the district court in *Sparger-Withers*

was required to do—the Seventh Circuit's decision will provide much-needed

guidance in an area of the law where it is severely lacking. *See Sparger-Withers*, 2024

WL 473719, at \*5 (explaining that the standard applicable to plaintiff's due process

claims is "an unsettled question"). Factors two and three thus favor a stay.

Factor one asks whether the non-moving party will suffer prejudice or be put

at a tactical disadvantage. *Johnson*, 150 F. Supp. 3d at 1007. When analyzing

prejudice in this context, some courts consider sub-factors,[6] others the progression of

the case,[7] and still others the availability of an alternative forum.[8] At its core, the

prejudice inquiry asks, given the case's procedural posture, how a stay would affect

the non-movant's prospect of obtaining relief. Spark argues that a stay here would be

prejudicial because it would allow the Attorney General to "continue[] to pursue the

---

[6] *See, e.g.*, *Cooper State Holdings, Inc. v. Zebulun Mountains, Inc.*, No. 1:23-cv-791, 2024 WL 3650594, at \*3 (S.D. Ind. June 13, 2024) ("When assessing prejudice, 'courts consider a variety of factors to determine prejudice to the non-movant, including the timing of the stay request, the status of review proceedings, and the relationship between the parties.'" (quoting *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 877 (N.D. Ill. 2016))).
[7] *See, e.g.*, *GoodCat, LLC v. Cook*, No. 1:16-cv-1514, 2016 WL 10490470, at \*1 (S.D. Ind. Nov. 21, 2016) ("[A]ny slight risk of prejudice . . . to [plaintiff] is mitigated by the fact that this case is at a very early stage.").
[8] *See, e.g.*, *Innovative Water Consulting, LLC v. SA Hosp. Acquisition Grp., LLC*, No. 1:22-cv-500, 2024 WL 2273454, at \*2 (S.D. Ind. Jan. 11, 2024) (staying a case where the plaintiff would be able to recover in state court receivership proceedings).

state court action that [Spark] contend[s] violates" the Constitution. (Doc. 14 at 2.) The Court disagrees.

Every stay causes some prejudice to the plaintiff, at least in the short run, because a judgment granting the relief they seek will be temporarily delayed. But in the long run, that delay does not invariably favor one party over another. *See Crowley v. Crowley*, No. 1:25-cv-137, 2025 WL 2605945, at *2 (S.D. Ind. Aug. 6, 2025) ("While a stay unavoidably slows the progression of a case, delay on its own does not constitute undue prejudice."). If the Seventh Circuit were to adopt Spark's reading of *Marshall*, then this Court would be bound to follow that ruling. In that case, Spark's path to a favorable judgment may well be expedited: instead of protracted litigation in this Court over Spark's due process claims, Spark could invoke *Sparger-Withers* and obtain relief from the Attorney General's prosecution. *See Free Speech Coalition, Inc. v. Rokita*, No. 1:24-cv-980, 2024 WL 5055810, at *2 (S.D. Ind. Nov. 27, 2024) (explaining that a party opposing a stay would "be litigating in a better position" if the higher court issues a favorable ruling).

To Spark's credit, courts have recognized that plaintiffs who allege ongoing injuries, as opposed to past ones, are more likely harmed by a stay. *Cf. Nath*, 893 F. Supp. 3d at 622 (finding no prejudice where the plaintiffs' injuries "occurred more than twenty-seven years ago"). And Spark is among those plaintiffs—it alleges that its constitutional rights are being violated each day the Attorney General pursues the state-court prosecution, and Spark's amended complaint seeks to enjoin him from doing so. (*See* Doc. 12 at 11.) But a temporary stay of these proceedings would not

inhibit Spark from defending that suit—whether on constitutional grounds or on the merits. That is because Spark may raise (and indeed, has already raised) its constitutional defense in state court.[9] *See Innovative Water Consulting, LLC v. SA Hosp. Acquisition Grp., LLC*, 2024 WL 2273454, at \*2 (finding no prejudice where a party would "be able to recover some of all of their claim" through parallel state court proceedings).

All this is to say that a party who has properly invoked a federal court's jurisdiction is entitled to having that court decide their claims. In fact, access to the judicial system is not just a matter of good social policy—it is a fundamental right. *See The Slaughter-House Cases*, 83 U.S. (16. Wall.) 36, 79 (1873); *see also King v. Marion Cir. Ct.*, 868 F.3d 589, 592 (7th Cir. 2017) (recognizing right to "get into court and receive a judicial decision"). But there is no right—fundamental or otherwise— to have a court decide a case *within a particular timeframe. Cf. Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

Thus, Spark's only real injury is a temporary inability to assert its constitutional defense in a state *and* federal forum, rather than just one. That is only prejudice if one assumes that one of those forums would be inherently more receptive to Spark's arguments. But Spark does not suggest—nor does this Court believe—that Spark's constitutional defense would be more warmly received by this Court than by

---

[9] Although Spark's defense in state court relies on the Illinois Constitution, both parties acknowledge that its due process clause is coextensive with that of the U.S. Constitution. (*See* Docs. 13 at 14, 13-3 at 9.) Spark may thus present identical arguments and authority in either forum.

a state court in Cook County. *See generally* Erwin Chemerinsky, *Ending the Parity Debate*, 71 B.U. L. Rev. 593 (1991) (explaining that federal courts are no more inclined to recognize constitutional liberties than are state courts). Accordingly, a stay would not prejudice Spark. And even if it did, that minimal degree of prejudice would not outweigh the benefits of waiting for the Seventh Circuit's decision in *Sparger-Withers*.

## III.    Spark's Proposed Alternative

In the alternative, Spark asks that any order staying this case also command the Attorney General to halt prosecution in state court. (Doc. 14 at 2 n.2.) For three reasons, this request is misplaced.

First, the Court may lack the authority to grant Spark's request. The Anti-Injunction Act divests federal courts of jurisdiction to "grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. And the Supreme Court has long recognized a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971).[10]

Second, Spark's request is no different than the ultimate relief sought in its amended complaint. Indeed, Spark's amended complaint asks the Court to "enjoin

---

[10] It is settled that federal courts have an "independent obligation to ensure that subject matter jurisdiction exists" in every case. *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004). To the extent that *Younger* abstention is jurisdictionally rooted—rather than a prudential doctrine based on respect for state judicial process—the Court questions whether it has jurisdiction to grant Spark the relief it seeks. *See Sprint Comms., Inc. v. Jacobs*, 517 U.S. 69, 72 (2013) (explaining that federal-court abstention is required "[w]hen there [are] parallel . . . state civil proceedings that are akin to criminal prosecutions" (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, (1975)). Nonetheless, because this case is to be stayed, and because neither party has raised these issues, the Court will refrain from deciding the question until after the stay has been lifted.

Attorney General Raoul from pursuit of the claims against" Spark "in the Circuit Court of Cook County, Illinois." (Doc. 13 at 9.) Were this Court to require the Attorney General to stop prosecuting the state court action now, it would be tantamount to a preliminary injunction. But before a court can even consider granting that kind of relief, the party requesting it must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). It would thus be inappropriate—not to mention procedurally improper—for the Court to entertain Spark's request at this stage. *See* Fed. R. Civ. P. 65(a)(1)–(2) (allowing courts to issue preliminary injunctions only upon motion, notice to the adverse party, and a hearing).

Third, granting Spark's alternative request would cause more prejudice than denying it. As discussed above, any prejudice that a stay of this case would cause is minimized by Spark's ability to raise its constitutional defense in state court. But by ordering the Attorney General to cease his prosecution, the Court would deprive Spark of the opportunity to do so.[11]

---

[11] Spark also argues in a footnote of its opposition that the Attorney General's response to its amended complaint is overdue because a stay motion is not among those that extend the time to file an answer under Rule 12(a)(4). (Doc. 14 at 2 n.1.) The Court disagrees. Courts, including those in this District, have found that moving for a stay tolls the deadline to answer a complaint, and Spark offers no reason to break from that commonsense approach. *See Petefish, Skiles & Co. v. Meads-Maes USA Chiren Joint Venture Co.*, No. 3:24-cv-3250, 2025 WL 2754549, at *3–4 (C.D. Ill. Sept. 26, 2025).

## CONCLUSION

IT IS THEREFORE ORDERED that the Attorney General's Motion to Stay, (Doc. 13), is GRANTED. The parties are ORDERED to file a status report within fourteen days of the Seventh Circuit's decision in *Sparger-Withers*.

*So ordered.*

Entered this 28th day of October 2025.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge
